George COWAN, Plaintiff–Appellant,

v.

PAUL REVERE LIFE INSURANCE COMPANY a/k/a PAUL REVERE IN-SURANCE GROUP, Defendant–Appellee.

No. 00–6462.

United States Court of Appeals, Sixth Circuit.

Feb. 11, 2002.

Before KENNEDY and DAUGHTREY, Circuit Judges; BELL *, District Judge.

KENNEDY, Circuit Judge.

Plaintiff George Cowan brought this action against Paul Revere Life Insurance Company ("Revere") alleging that Revere breached the terms of a long term disability insurance contract and that Revere's denial of Cowan's claim was made in bad faith. Cowan sought punitive damages on his bad faith claim. Revere filed a motion for summary judgment on both claims. The district court granted Revere's motion as to the bad faith claim, but denied its motion on the breach of contract issue and *sua sponte* granted summary judgment in favor of Cowan on the coverage issue. Cowan appeals the district court's grant of summary judgment on the bad faith claim. We affirm.

### I.

Cowan was employed by the Wayne County Kentucky Board of Education as a school bus driver from 1979 until November 20, 1995. Cowan was diagnosed with diabetes melitis in 1988. On November 20, 1995, Cowan saw Dr. Babalakin, who told Cowan that his blood sugar was at a dangerous level, and that he would need to be hospitalized. During his hospitalization, Cowan began taking insulin to control his diabetes. Following his release, Cowan spoke with one of his supervisors, Wayne Roberts, who told Cowan that state and federal regulations would preclude him from possessing a license to drive a school bus, given his insulin dependence. At the time, Cowan was also suffering from pain and impaired vision, for which he wore corrective lenses, as a result of his diabetes. Cowan's commercial driver's license (CDL) was not revoked. On December 11, 1995, Cowan filed an application for long term disability benefits under a group policy issued by Revere to Cowan. The policy provided for long term disability coverage to Cowan if he was "totally disabled," as defined by the policy. The policy defines "totally disabled" as follows:

1. because of injury or sickness, the employee cannot perform the important duties of his own occupation;

2. the employee is receiving Doctor's Care. We will waive this requirement if we receive written proof acceptable to us that further Doctor's Care would be of no benefit to the employee; and

3. the employee does not work at all.

(J.A. at 84).

Revere denied Cowan's claim in a letter dated March 4, 1996. Revere indicated that Cowan was not "totally disabled" because it appeared that he was "unable to perform the duties of [his] occupation due to an inability to retain a commercial drivers [sic] license." Revere cited the following provision in support of the denial:

Licensed Professional means a person who must hold a current license from the licensing authority of the jurisdiction in which he works or practices in order

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

to work legally in his own occupation or profession. A licensed professional will not be considered to be disabled because of the loss, revocation, restriction or non-renewal of his license for any reason. (J.A. at 145, 184.) Cowan protested the denial. Revere repeated its denial in a letter dated August 6, 1995. This time, Revere referred Cowan to a provision of the policy that reads:

*Additional Provisions Pertaining to Disability:* [An employee] shall not be considered disabled solely as a result of the loss, restriction, revocation or non-renewal of any license, permit or certifications necessary to perform the duties of any occupation. Rather, an employee's disability will be determined relative to his inability to work as a result of total or residual disability as defined in this Policy.

(J.A. at 152, 186.) Revere's letter went on to explain:

While we would agree that Mr. Cowan has been insulin dependent for his diabetes, that, in itself, would not qualify an employee as [totally disabled]. Although the Department of Labor will not allow Mr. Cowan to drive a bus due to insulin therapy, this would not constitute his inability to perform the duties of a bus driver under the provisions of the Long Term Disability policy.

(J.A. at 187.)

During its investigation of Cowan's claim, Revere sent a field representative to interview Dr. Patel, Cowan's treating physician.[1] Dr. Patel stated that Cowan could physically still drive a bus, with the aid of eyeglasses. Dr. Babalakin, who hospitalized Cowan, told Revere's representative that Cowan was still able to drive a bus, but that he signed Cowan's claim form because Cowan brought him a copy of the state regulations that preclude insulin-dependent diabetics from driving buses. In support of his claim, Cowan submitted to the trial court the affidavit of Dr. Matthews, who also examined him. Dr. Matthews explained:

While [Cowan] may, at different times, be able to physically operate controls, diabetics, such as [Cowan], with insulin therapy exhibit nervousness, confusion, drowsiness, weakness, dizziness, light-headedness, inability to concentrate, blurred vision, depression, unsteady movement and other symptoms that would prevent the safe performance of operating a bus.

An insulin dependent diabetic should not be allowed to drive a bus load of children.

(J.A. at 195).

Cowan brought suit against Revere, seeking a declaration that he is entitled to disability benefits under the policy and punitive damages for Revere's bad faith denial of his claim. While the district court granted summary judgment to Cowan on the issue of coverage, it granted summary judgment in favor of Revere on the bad faith claim finding Revere had a reasonable basis to deny the claim. Cowan appeals the ruling as to bad faith. Revere does not appeal the ruling as to coverage.

## II.

We review a district court order granting summary judgment under a *de novo* standard of review, without deference to the decision of the lower court. *Taylor v.*

---

1. On November 20, the day Cowan was hospitalized, Dr. Patel was out of the office and Cowan was examined by Dr. Babalakin.

*Michigan Dept. of Corrections,* 69 F.3d 76 (6th Cir.1995); *Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372, 1376 (6th Cir.1996). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

■ Cowan's claim of bad faith implicates Kentucky's Unfair Claims Settlement Practices Act, KRS 304.12–230, Kentucky's Consumer Protection Act, KRS 367.110, *et seq.,* and the common law claim of bad faith failure to pay or settle claims. Any of these three bases may support an insured's private tort claim against an insurer upon proof of bad faith failure to pay claims clearly due and payable. *See Wittmer v. Jones,* 864 S.W.2d 885, 886 (Ky. 1993). In *Wittmer,* the Supreme Court of Kentucky stated that a claim for bad faith refusal to pay or settle claims requires:
> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.... [A]n insurer is ... entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts.

*Id.* at 890 (citing *Curry v. Fireman's Fund Ins. Co.,* 784 S.W.2d 176, 178 (Ky.1989)). The Court of Appeals of Kentucky later suggested that an insured's claim of bad faith must fail where the claim is "fairly debatable" on the law or the facts. *See Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv.,* 880 S.W.2d 886, 889–90 (Ky.Ct.App.1994).

■ We agree with the district court. The undisputed facts show that Revere's denial of coverage had a reasonable basis in both law and fact. Whether the policy covered Cowan's disability claim was a question of law for the district court to decide. The district court ultimately ruled that Cowan's claim was covered under the policy, and that Cowan was therefore entitled to disability benefits. The court rejected Revere's argument that it could deny coverage based on the distinction between legal and factual disabilities, and agreed with Cowan that he suffered from a factual disability and would be unable to drive a school bus even if his license were not revoked. (J.A. at 237.) Thus, the court concluded, Cowan was "totally disabled" as defined by the policy.

Nonetheless, the court ruled that Cowan's bad faith claim must fail, because the cases of *Dang v. Northwestern Mutual Life Ins.,* 960 F.Supp. 215 (D.Neb.1997); *Goomar v. Centennial Life Ins.,* 855 F.Supp. 319 (S.D.Cal.1994); and *Massachusetts Mut. Life Ins. v. Ouellette,* 159 Vt. 187, 617 A.2d 132 (1992) supported Revere's distinction between legal and factual disabilities. We agree that these cases lend support to Revere's decision to deny Cowan's claim. Although factually distinguishable, each of these cases invoke the distinction between factual disability and legal disability, and in each instance the court denied coverage, finding that the insured suffered only a legal disability. Revere had spoken with both Dr. Patel and Dr. Babalakin, each of whom indicated that Cowan could physically drive a bus. Dr. Babalakin indicated that he signed a disability form only because he was shown the regulations precluding an insulin-dependent diabetic from driving a bus. Although Cowan had not actually lost his CDL, the state regulations clearly indicate that he was not legally permitted to have a

CDL, and Cowan's supervisor would not let him return to work because of those regulations. Thus, Revere had a reasonable basis in fact to believe that Cowan was suffering from only a legal disability. Although none of the three cases cited for that distinction are from Kentucky, there is apparently no Kentucky case dealing with the issue. Thus, Revere could plausibly argue that the law in Kentucky should permit insurers to make such a distinction. As in *Empire Fire & Marine*, this was a coverage issue of first impression in Kentucky, but the issue had been addressed by other courts. 880 S.W.2d at 888–90. Where, as in *Empire Fire & Marine* and in the present case, at least some of the other courts have adopted the position advanced by the insurer, the question is "fairly debatable." Thus, Revere's posited distinction between legal and factual disabilities had a reasonable basis in the law. Revere's denial of coverage, although ultimately deemed incorrect by the district court, was not unreasonable.

■ Cowan makes several arguments in response. First, he argues that the district court's decision to grant Revere summary judgment on the bad faith claim cannot be reconciled with the court's decision on coverage. This argument is meritless. Whether the claim was covered under the policy was a legal issue, eventually decided by the district court. The issue of bad faith, however, looks to Revere's decision to deny the claim *before* the final determination of coverage was made by the court. *See Empire Fire & Marine*, 880 S.W.2d at 888. Simply because the court ultimately concluded, as a matter of law, that the policy provided coverage does not necessarily establish that the insurer's denials were made in bad faith. To conclude otherwise would "effectively deprive every insurer of its right either to raise lack of coverage as a defense to an action on a policy or to file an action seeking a declaration of rights respecting coverage." *Id.* An insurer's position must only be "fairly debatable," it need not be correct as a matter of law.

Next, Cowan argues that Revere's interpretation would require Cowan to work at the peril of his health or life, as well as the children's. He points to the symptoms of his diabetes, including nervousness, confusion, drowsiness, weakness, dizziness, lightheadedness, inability to concentrate, blurred vision, depression, and unsteady movement. (Brief at 18.) Cowan's argument misses the point. Although the potential for these symptoms to manifest themselves while driving presents a policy reason for preventing insulin-dependent diabetics from driving busloads full of children to school, it is at least arguable that the symptoms do not render Cowan "totally disabled" from his occupation. That Cowan would endanger the children is arguably the rationale for the law, rather than a disability in itself. Although the district court found that Cowan was indeed "totally disabled" under the policy, Revere had a reasonable basis to believe otherwise—namely, the opinions of Drs. Patel and Babalakin that Cowan was not factually disabled from driving a bus.

Next, Cowan argues that the district court applied the wrong standard in assessing the bad faith claim. The district court, after noting the three cases invoking the distinction between legal and factual disabilities, stated: "[W]ithout reaching the conclusion as to whether this case presents a legal disability or a physical disability I will say that the defendant could have seen it to be fairly debatable that this perhaps was a legal disability and not a physical disability." (J.A. at 392–93.) Cowan argues that by asking whether defendant could have seen it to be fairly debatable, the court introduced a subjec-

tive test. The phrasing of the district court's finding does not obviously indicate that it employed a subjective test. Rather, the court was apparently making an objective determination of whether Revere's position was reasonable, given the three cases cited by Revere. In any event, applying an objective standard, we are satisfied that the district court reached the proper result. Thus, we will affirm the district court's decision regardless of whether it relied on an improper standard to reach its conclusion.

Finally, Cowan contends that there was no issue of first impression of Kentucky law, because several Kentucky cases establish the law governing disability insurance coverage. Cowan cites to *Ginsburg v. Insurance Co. of N. America*, 427 F.2d 1318 (6th Cir.1970); *Travelers' Ins. Co. v. Turner*, 239 Ky. 191, 39 S.W.2d 216 (1931); and *Henderson v. Continental Cas. Co.*, 239 Ky. 93, 39 S.W.2d 209 (Ct.App.1931). These cases provide the general Kentucky law regarding disability insurance policies, and stand for the proposition that an insured need not be totally disabled (in the sense that she cannot perform *any* function of her job) in order to recover under a disability policy. *See, e.g., Henderson*, 39 S.W.2d at 210. But none of these cases address the distinction between legal and factual disabilities. Hence, Revere's reliance on cases from other jurisdictions to support its denial of Cowan's claim was reasonable, even if the district court ultimately found them distinguishable from the present case.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.