**Danny HAMILTON and Susan Hamilton, Appellants/Cross–Appellees,**

v.

**TRANS UNION SETTLEMENT SOLUTIONS, INC., Appellee/Cross–Appellant.**

Nos. 2008–CA–001475–MR, 2008–CA–001510–MR.

Court of Appeals of Kentucky.

Aug. 14, 2009.

John T. Chafin, Prestonsburg, KY, for appellants/cross-appellees.

Stephen L. Hogg, Pikeville, KY, for appellee/cross-appellant.

Before CLAYTON and THOMPSON, Judges; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge Assigned).

This appeal and cross-appeal are from the judgment and order of the Floyd Circuit Court granting Appellants recovery from Appellee in the sum of $37,299.42. For the reasons stated herein, we reverse and remand for further consistent proceedings.

## FACTUAL BACKGROUND

In October 2003, Appellants, Danny and Susan Hamilton, purchased a parcel of real property from the City of Prestonsburg

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

(the City) for the purpose of constructing a residence thereon. The real property had been conveyed to the City by a general warranty deed from David and Della Clifton. The deed contained a land use restriction providing "said property herein conveyed shall be used for recreational purposes only." The deed from the City to Appellants contained no reservation or indication that the property could only be used for recreational purposes.

Financing for Appellants' purchase of the property was obtained through First Commonwealth Bank (First Commonwealth). Prior to making the loan, First Commonwealth ordered a title search through the law firm of Fitzpatrick, Osborne, Heaberlin & Sturgill, PSC (Fitzpatrick), with attorney Martin Osborne rendering the title report. Mr. Osborne failed to note the land use restriction.

Appellants began construction of their residence in December 2003. In November 2004, they applied to Community Trust Bank (Community Trust) for a residential construction loan. Community Trust requested that Appellee, Trans Union Settlement Solutions, Inc. (Trans Union), perform a title examination, and a non-attorney, Charles Huffman, examined the title for Trans Union. Mr. Huffman also failed to discover the restriction. The title abstract performed by Appellee Trans Union was paid for by Appellants from loan closing costs which were included on the settlement statement signed by Appellants at the loan closing.

In May 2005, the Cliftons became aware that Appellants were constructing a residence on their former property. They notified their attorney, who in turn notified the various parties of the restriction. Community Trust thereafter froze any further draws on Appellants' construction account.

Appellants sued Trans Union, the City of Prestonsburg, First Commonwealth Bank, and Community Trust Bank. They also sued the entities that issued and underwrote the lenders title insurance policy—Investors Title Insurance Company (Investors Title) and Bankers Title of Central Kentucky LLC (Bankers Title)—and the Cliftons. The complaint alleged various legal theories, and asked that the defendants be adjudged jointly and severally liable to Appellants for their damages. They also sought attorneys' fees and pre-judgment interest.

The various parties filed cross claims, counterclaims, and third-party claims. All of the claims were eventually settled or dismissed, except for the claims of Appellants against Trans Union, the City, and First Commonwealth Bank. A bench trial was held on April 16, 2008, at which time Appellants' counsel informed the trial court as a preliminary matter that settlements had been reached between Appellants and the City in the amount of $81,167.16 and between Appellants and First Commonwealth in the amount of $19,135.00. At the conclusion of the bench trial, the trial court did not discuss the Appellee's liability, but rather asked counsel for both parties to draft memoranda regarding whether Appellants should recover interest and attorneys' fees. The trial court also noted that the memoranda could address any other issues that counsel wished to present.

Prior to submitting their memorandum, Appellants obtained a disclosure of the settlement they had reached with the City whereby a portion of the settlement amount was allocated as payment for 2/3 of Appellants' attorney fees and 2/3 of Appellants' pre-judgment interest. Appellant, Danny Hamilton, executed an affidavit that detailed the First Commonwealth settlement which he said included the remaining

1/3 in interest and attorneys' fees. Consequently, Appellants submitted a memorandum to the trial court, stating that the issue of interest and attorneys' fees was moot, as those amounts had been included in the settlement amounts from the City and First Commonwealth.

However, Appellants' memorandum specified the following expenditures or expenses as their remaining damages: $77,116 for the Community Trust lien; $497 to Archway Press, Inc. for architectural plans; $850 to Alchemy Engineering Associates, Inc. for construction expenses; $430.57 representing 1/3 of the property taxes on the property; $460.57 representing 1/3 of the insurance payments on the property; $1,419 representing 1/3 of out-of-pocket construction-related payments made by Danny Hamilton; and $301.58 representing the remaining portion of the court reporter fees.

Thereafter, the trial court issued a final order and judgment stating that Appellants had been wronged, and should recover damages, but because Appellants' counsel had "surreptitiously" included interest and attorneys' fees in the settlements between Appellants and the City and Appellants and First Commonwealth, they had committed a fraud on the court. Accordingly, the trial court reduced the total amount of damages Appellants sought from Appellee by the amount of interest and attorneys' fees claimed and paid by the settling defendants. The court explained, "this amount ($37,299.42) represents the $80,965.57 as claimed by the plaintiffs less attorney fees and interest as claimed."

Appellants argue on appeal that the trial court abused its discretion by failing to adjudge Appellee liable for the full amount of the damages they claimed. They contend that the trial court abused its discretion when it deducted attorneys' fees and interest from the judgment amount, and that, by so doing, the trial court essentially set aside the settlement agreements between Appellants, the City, and First Commonwealth. Appellee contends on cross-appeal that the trial court erred in awarding any sum to Appellants, as Appellee owed no duty to Appellants, and Appellants' complaints regarding the deduction of attorneys' fees and interest are without merit.

## ANALYSIS

At a bench trial, the factual findings of the trial court shall not be set aside unless they are clearly erroneous. Due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. Kentucky Rules of Civil Procedure (CR) 52.01. *Cole v. Gilvin*, 59 S.W.3d 468, 472–73 (Ky.App.2001).

Appellants first contend that the trial court abused its discretion by failing to impose on Appellee the full amount of the damages they claimed. Appellee contends that the trial court erred in awarding any sum because Appellee did not owe any duty to Appellants. For Appellants to recover damages, Appellee must be shown to have been negligent and such negligence must be the proximate cause of their damages. *Illinois Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky.1967).

The duty of a title abstracter to parties involved in real estate transactions is discussed in *Seigle v. Jasper*, 867 S.W.2d 476 (Ky.App.1993). In *Seigle*, a husband and wife received a general warranty deed for one property, and subsequently purchased another property from the same parties. They applied for a loan to purchase the second lot and to pay the balance owed on the first lot. An attorney performed the title examination for the loan, and the Seigles paid his fees as part of their closing costs.

A few years later, the Seigles borrowed additional money. The same attorney wrote a second title letter to the bank, and the parties again paid his fees through closing costs. The Seigles were never informed by the attorney in either of the title opinions that each of their lots was encumbered by an easement to Ashland Oil for an underground pipeline. When the Seigles learned of the easement, and were advised by Ashland Oil that the placing of improvements on the lots was an encroachment of the easement, they sued their attorney for negligence.

The Court held that the title abstracter owed a duty to the Seigles, stating:

> [w]here the abstracter knows, or should know, that his customer wants the abstract for the use of a prospective purchaser, and the prospect purchases the land relying on the abstract, *the abstracter's duty of care runs ... not only to his customer but to the purchaser.* (Emphasis added).

*Id.* at 482 (quoting *First Am. Title Ins. Co. v. First Title Serv. Co.,* 457 So.2d 467, 473 (Fla.1984)). Although this language seems to apply only to situations involving the purchase of property, the Court based its decision in large part on the Restatement (Second) of Torts, § 552, which states the following:

> [o]ne who, in the course of his business, profession or employment ... supplies false information for the guidance of others *in their business transactions,* is subject to liability for *pecuniary loss caused to them by their justifiable reliance upon the information,* if he fails to exercise reasonable care or competence in obtaining or communicating the information. [Emphasis added].

As shown above, the Restatement discusses "business transactions" rather than limiting the applicable situations to purchases of land. The Restatement further states:

> the liability ... is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. [Emphasis added].

■ Appellee had a duty to exercise ordinary care in its examination of the title to the subject real property. It breached that duty by failing to discover the restriction contained in the chain of title whereby Appellants' use of their property was severely impaired. Moreover, Appellee knew or should have known that its work product would be relied upon by Appellants as their names were on the title abstract work order sent to Appellee's agent, Huffman, and Appellee's records showed that Appellants had paid the fees associated with the title abstract. Indeed, Huffman stated in his deposition that he knew the loan was for the construction of a residence, and he admitted in his deposition that he breached his duty when he failed to include the restriction in his report. Therefore, the trial court's determination that Appellee was liable to Appellants was not clearly erroneous.

■ We must next determine whether the trial court was clearly erroneous with respect to calculation of the damages that arose from the defective title abstract prepared in connection with the Community Trust loan. It is clear that Appellants would not have obtained the mortgage loan from Community Trust had Appellee properly performed its duties with respect to the title examination and disclosed the restriction. As such, and as determined by the trial court, Appellants established their entitlement to damages from Appellee in

the amount of $80,965.57. This sum represents the amount of the Community Trust mortgage loan, $77,116.00, plus various other small expenditures in the nature of costs and fees. The trial court was not clearly erroneous.

The real issue is whether the trial court was possessed of discretion to deduct an amount equivalent to the interest and attorneys' fees paid by the settling defendants from the aggregate amount of compensatory damages owed by Appellee, $80,965.57. Appellants claim that in so doing, the trial court essentially set aside the settlement agreements they had negotiated with the City of Prestonsburg and First Commonwealth Bank. Appellee argues that the trial court acted within its discretion.

 Appellants' underlying claim against Appellee was for professional negligence. Kentucky follows the American Rule that provides "in the absence of a statute or contract expressly providing therefor, attorney fees are not allowable as costs, nor recoverable as an item of damages." *Cummings v. Covey*, 229 S.W.3d 59, 61 (Ky.App.2007). Recognizing this, Appellants rely on the language contained in the deed from the Cliftons to the City, which they claim runs with the land and inures to their benefit. The language at issue is as follows: "[i]f it becomes necessary for Grantors to enforce their reversionary rights herein, Grantee shall pay Grantors' legal fees and costs, including attorneys fees incurred in connection with such enforcement, regardless of the outcome of the litigation." In our view, this provision applies only to enforcement of the reversionary rights of the Cliftons. Appellants had no reversionary rights, so this provision grants them no benefit. Otherwise, there is no basis for an award of attorneys' fees to Appellants.

 With respect to pre-judgment interest, the amount of the mortgage was by agreement of the parties or fixed by operation of law and was thus a liquidated sum. The difference between the amount of the mortgage and the total sum in controversy arose from fees and costs and these, too, are liquidated amounts. Thus, we conclude that the entire $80,965.57 is a liquidated sum sufficient to support an award of pre-judgment interest to render Appellants whole.

We have concluded as set forth hereinabove that Appellants were not entitled to attorneys' fees, but were entitled to pre-judgment interest. Prior to deciding these issues, the trial court ordered briefing on Appellants' claim for pre-judgment interest and attorneys' fees. However, before briefing was complete and before the court had an opportunity to rule, Appellants agreed with the City of Prestonsburg and with First Commonwealth Bank that their settlements compensated for attorneys' fees and pre-judgment interest. From this the trial court reasonably inferred that Appellants had been paid the interest and attorneys' fees they claimed, thus effectively rendering the pending legal questions moot.

An examination of the trial court's final judgment and order entered herein on July 3, 2008, reflects significant, and not unreasonable, disapproval of the behavior of Appellants in their settlements with the City of Prestonsburg and First Commonwealth Bank. The court refers to the negotiations between Appellants and the settling parties as "surreptitious." The court states that "to allow the full recovery of the amount sought by the plaintiffs [Appellants herein] would allow counsel for the plaintiffs to completely ignore the orders of the court and therefore constitutes a fraud on the court." Though its view is not entirely transparent, the trial court seems to have concluded that Appellants were not entitled to recover interest and

attorneys' fees. From this, the court reasoned that allowance of the undisputed amount of the mortgage debt and fees, $80,965.57, would result in an award far exceeding that to which Appellants were entitled. To address what the court believed would be a recovery "over and above what they are legally entitled to," it reduced the undisputed amount of the mortgage debt and fees to $37,299.42, and commented that this sum "represents the $80,965.57 as claimed by the plaintiffs less attorneys' fees and interest as claimed." Effectively, the court reduced the amount due by the amount it believed to have been improperly collected interest and attorneys' fees.

While the trial court was understandably and justifiably annoyed with Appellants' behavior, it chose the wrong remedy. The trial court lacked discretion to punish Appellants by deducting their negotiated recovery of interest and attorneys' fees from the compensatory award to which they were entitled. In general, parties in civil litigation are entitled to settle on such terms as they may choose, and it is not uncommon for a party to obtain in settlement sums which may not have been recoverable in court. If Appellants, their attorneys or other parties behaved contemptuously or unethically, remedies were available. But the trial court had no right to deduct from Appellants' judgment against Appellee sums it believed they had improperly obtained through negotiations with other parties.

For the foregoing reasons, the judgment of the Floyd Circuit Court is reversed and this cause remanded for further consistent proceedings.

ALL CONCUR.